1   AARON EZROJ
    Attorney-In-Charge
2   QUI TAM LAW, P.C.
    1024 Bayside Dr. # 349
3   Newport Beach, CA 92660
    aaron.ezroj@qtamlaw.com
4   Telephone: 949-312-1042

United States Courts
Southern District of Texas
F I L E D

FEB 03 2025

Nathan Ochsner, Clerk of Court

5

6               **UNITED STATES DISTRICT COURT**

7               **SOUTHERN DISTRICT OF TEXAS**

8   [UNDER SEAL],                    | Case No.: 24cv4904

9           Plaintiffs,              | **FIRST AMENDED COMPLAINT**

10      v.                           | **DEMAND FOR JURY TRIAL**

11  [UNDER SEAL],                    | **[FILED IN CAMERA AND UNDER SEAL**
                                        **PURSUANT TO 31 U.S.C. § 3730(b)(2)]**
12          Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT



1    AARON EZROJ
     Attorney-In-Charge
2    QUI TAM LAW, P.C.
     1024 Bayside Dr. # 349
3    Newport Beach, CA 92660
     aaron.ezroj@qtamlaw.com
4    Telephone: 949-312-1042

5

6               **UNITED STATES DISTRICT COURT**

7               **SOUTHERN DISTRICT OF TEXAS**

8    UNITED STATES OF AMERICA *ex rel.* PPP      Case No.: 24cv4904
     ELIGIBILITY EXPERTS LLC,
9

10            Plaintiffs,             **FIRST AMENDED COMPLAINT**

11           v.                   **DEMAND FOR JURY TRIAL**

12    APOLLO HEALTHCARE AT SUGARLAND,    **[FILED IN CAMERA AND UNDER SEAL**
     LP DBA THE MEDICAL RESORT AT         **PURSUANT TO 31 U.S.C. § 3730(b)(2)]**
13    SUGAR LAND; APOLLO PARTNERS AT
     SUGARLAND, LLC; APOLLO
14    HEALTHCARE BAY AREA, LP DBA THE
     MEDICAL RESORT AT BAY AREA;
15    APOLLO COMMUNITY PARTNERS, LLC;
     APOLLO HEALTHCARE AT
16    WILLOWBOOK, LLC DBA THE MEDICAL
     RESORT AT WILLOWBROOK; APOLLO
17    HEALTHCARE AT PEARLAND, LLC DBA
     THRIVE REHABILITATION OF
18    PEARLAND; APOLLO REHAB HOSPITAL,
     LLC DBA PAM HEALTH
19    REHABILITATION HOSPITAL OF SUGAR
     LAND; APOLLO REHAB AT
20    WOODLANDS, LLC DBA THE MEDICAL
     RESORT OF THE WOODLANDS; SENIOR
21    CARE EXCELLENCE, LLC DBA THE
     MEDICAL RESORT AT SUGAR LAND;
22    FOUNDERS PLAZA NURSING &
     REHABILITATION, LP DBA FOUNDERS
23    PLAZA NURSING AND
     REHABILITATION; FOUNDERS PLAZA
24    NURSING & REHABILITATION
     PARTNERS, LLC; SUGARLAND MED
25    PROPERTIES, LP; SUGARLAND MED

26

27

28

                    FIRST AMENDED COMPLAINT

PROPERTY PARTNERS, LLC; BELTWAY 8
MED PROPERTIES, LP; BELTWAY 8 MED
PROPERTY PARTNERS, LLC;
WILLOWBROOK MED PROPERTIES, LLC;
WOODLANDS MED PROPERTIES, LLC;
ARCHANA THOTA

     Defendants.

FIRST AMENDED COMPLAINT

Pursuant to the federal False Claims Act, PPP Eligibility Experts LLC, on behalf of the United States of America, alleges the following:

**INTRODUCTION**

1.    The United States Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to help stabilize the economy during the COVID-19 pandemic. The CARES Act created the Paycheck Protection Program ("PPP") to provide necessary payroll cost support for eligible small businesses. Millions of applicants collectively received hundreds of billions of dollars through PPP loans.

2.    Apollo Healthcare at SugarLand, LP doing business as The Medical Resort at Sugar Land, Apollo Healthcare Bay Area, LP doing business as The Medical Resort at Bay Area, Apollo Healthcare at Willowbrook, LLC doing business as The Medical Resort at Willowbrook, Apollo Healthcare at Pearland, LLC doing business as Thrive Rehabilitation of Pearland, Apollo Rehab Hospital, LLC doing business as PAM Health Rehabilitation Hospital of Sugar Land, Apollo Rehab at Woodlands, LLC doing business as The Medical Resort of the Woodlands, Senior Care Excellence, LLC doing business as The Medical Resort at Sugar Land, Founders Plaza Nursing & Rehabilitation, LP doing business as Founders Plaza Nursing and Rehabilitation, SugarLand Med Properties, LP, Beltway 8 Med Properties, LP, Willowbrook Med Properties, LLC, Woodlands Med Properties, LLC, and Archana Thota (the "Defendants") committed fraud in PPP applications for loans totaling **over $10 million of PPP loans** and forgiveness applications for these loans. Lenders also received tens of thousands of dollars in loan processing fees.

3.    Led by President Archana Thota, Defendants make up one of the largest medical groups in the Southern District of Texas. Affiliated entities include at least eight medical facilities. Affiliated entities have at least several hundred employees, hold interests in valuable real estate worth tens of millions of dollars, received nearly $4 million of additional COVID-19

FIRST AMENDED COMPLAINT

1  relief through Provider Relief Funds,[1] and earn many millions of dollars of income providing

2  services in addition to any income obtained from leasing their real estate to their medical

3  facilities.

4      4.      PPP loan applications did not reflect the true size of affiliated entities of

5  Defendants. Instead, affiliated entities of Defendants knowingly falsely claimed eligibility for

6  PPP loans and supported their applications with documents that did not reveal information on

7  their true number of employees, wage information, industry, annual receipts, tangible net worth,

8  income and economic need.

9      5.      Such false claims and statements of affiliated entities of Defendants were material

10 in affiliated entities of Defendants receiving PPP loans and lenders receiving loan processing

11 fees. Without these false claims and statements, affiliated entities of Defendants would not have

12 received PPP loans and their lenders would not have received loan processing fees. These claims

13 and statements thus violate the federal False Claims Act, §§ 31 U.S.C. 3729 *et seq.*

14     6.      PPP Eligibility Experts LLC (the "Relator") brings this action on behalf of the

15 United States of America against affiliated entities of Defendants for treble damages and civil

16 penalties arising from the Defendants' false claims in violation of the federal False Claims Act,

17 31 U.S.C. §§ 3729 *et seq.*

18                                    **PARTIES**

19     7.      Relator PPP Eligibility Experts LLC was formed to identify applicants who

20 fraudulently obtained government funds. Relying on their finance, real estate, property

21 management and other pertinent expertise, Relator serves as the original source of information

22

23

24
25
26
27

[1] Health and Human Services oversaw the provision of Provider Relief Funds during the COVID-19 pandemic. Provider Relief Funds provided flexible funding to medical facilities. Defendants received nearly $4 million in Provider Relief Funds during the COVID-19 pandemic: Apollo Healthcare at SugarLand, LP received $1,024,812, Apollo Healthcare Bay Area, LP received $945,251, Apollo Healthcare at Willowbrook, LLC received $838,658, Apollo Healthcare at Pearland, LLC $714,705, Apollo Rehab Hospital, LLC received $475,917, and Apollo Rehab at Woodlands, LLC received $693,761. Provider Relief Funds already provided Defendants with COVID-19 relief funds to address financing concerns during the COVID-19 pandemic. *See* https://data.cdc.gov/Administrative/HHS-Provider-Relief-Fund/kh8y-3es6/data_preview (last visited December 10, 2024).

28

FIRST AMENDED COMPLAINT

1    identifying parties who fraudulently obtained government funds and did not return said funds.

2    Relator's principal place of business is in Irvine, California.

3        8.        Defendant Apollo Healthcare at Sugarland, LP doing business as The Medical

4    Resort at Sugar Land is a medical facility located at 1803 Wescott Ave, Sugar Land, TX 77479.

5        9.        Defendant Apollo Partners at Sugarland, LLC is the general partner of Apollo

6    Healthcare at Sugarland, LP, with its principal place of business at 1803 Wescott Ave, Sugar

7    Land, TX 77479.

8        10.        Defendant Apollo Healthcare Bay Area, LP doing business as the Medical Resort

9    at Bay Area is a medical facility located at 4900 E Sam Houston Pkwy S, Pasadena, TX 77505.

10        11.        Defendant Apollo Community Partners, LLC is the general partner of Apollo

11    Healthcare Bay Area, LP, with its principal place of business at 1803 Wescott Ave, Sugar Land,

12    TX 77479.

13        12.        Defendant Apollo Healthcare at Willowbrook, LLC doing business as the Medical

14    Resort at Willowbrook is a medical facility located at 13220 Breton Ridge St, Houston, TX

15    77070.

16        13.        Defendant Apollo Healthcare at Pearland, LLC doing business as Thrive

17    Rehabilitation of Pearland is a medical facility located at 3406 Business Center Dr, Pearland, TX

18    77584.

19        14.        Defendant Apollo Rehab Hospital, LLC doing business as PAM Health

20    Rehabilitation Hospital of Sugar Land is a medical facility located at 7622 Branford Pl, Sugar

21    Land, TX 77479.

22        15.        Defendant Apollo Rehab at Woodlands, LLC doing business as The Medical

23    Resort of the Woodlands is a medical facility located at 24854 Cathedral Lakes Pkwy, Spring,

24    TX 77386.

25        16.        Defendant Senior Care Excellence, LLC doing business as The Medical Resort at

26    Sugar Land is a medical facility located at 1803 Wescott Av, Sugar Land, TX 77479.

27        17.        Defendant Founders Plaza Nursing & Rehabilitation, LP doing business as

28

FIRST AMENDED COMPLAINT

1   Founders Plaza Nursing and Rehabilitation is a medical facility located at 721 Highway 78,

2   Wylie, TX 75098.

3          18.     Defendant Founders Plaza Nursing & Rehabilitation Partners, LLC is the general

4   partner of Founders Plaza Nursing & Rehabilitation, LP, with its principal place of business at

5   721 Highway 78, Wylie, TX 7509.

6          19.     Defendant Sugarland Med Properties, LP is a real estate holding company with its

7   principal place of business at 6125 Luther Ln, Dallas, TX 75225.

8          20.     Defendant Sugarland Med Property Partners, LLC is the general partner of

9   Sugarland Med Properties, LP, with its principal place of business at 6125 Luther Ln, Dallas, TX

10  75225.

11         21.     Defendant Beltway 8 Med Properties, LP is a real estate holding company with its

12  principal place of business at 5909 Luther Ln, Dallas, TX 75225.

13         22.     Defendant Beltway 8 Med Property Partners, LLC is the general partner of

14  Beltway 8 Med Properties, LP, with its principal place of business at 6125 Luther Ln, Dallas, TX

15  75225.

16         23.     Defendant Willowbrook Med Properties, LLC is a real estate holding company

17  with its principal place of business at 6125 Luther Ln, Dallas, TX 75225.

18         24.     Defendant Woodlands Med Properties, LLC is a real estate holding company with

19  its principal place of business at 6125 Luther Ln, Dallas, TX 75225.

20         25.     Defendant Archana Thota is an individual who is the President of all eight

21  defendant borrowers. They have an ownership interest in borrower defendants and the real estate

22  where borrower defendants are located.

23                         <u>**JURISDICTION AND VENUE**</u>

24         26.     This Court has jurisdiction over the subject matter of this action pursuant to 28

25  U.S.C. § 1331 and 31 U.S.C. § 3732(a). The latter section specifically confers subject matter

26  jurisdiction for this type of action, any action under 31 U.S.C. § 3730.

27         27.     This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §

28

FIRST AMENDED COMPLAINT

1   1391(b) and 31 U.S.C. § 3732(a) because one or more of the Defendants transacts business in the

2   Southern District of Texas. Moreover, 31 U.S.C. § 3732(a) allows for nationwide service of

3   process.

4        28.      Venue is proper in the Southern District of Texas pursuant to 31 U.S.C. § 3732(a)

5   and 28 U.S.C. § 1391(b), because one or more of the Defendants transacts business in the

6   Southern District of Texas and all Defendants reside there. Moreover, events giving rise to this

7   action took place in the Southern District of Texas.

8        29.      There has been no statutorily relevant public disclosure as articulated in 31 U.S.C

9   § 3730(e)(4)(A). Relator therefore has direct and independent knowledge of the information on

10  which the allegations set forth in this Complaint are based and is the original source of the

11  allegations contained herein. 31 U.S.C §§ 3730(e)(4)(A)-(B).

12                           **FEDERAL FALSE CLAIMS ACT**

13       30.      The federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* was established to allow

14  the government to collect money from parties that have made false claims and statements to

15  fraudulently obtain government funding.

16       31.      Pursuant to 31 U.S.C. § 3729(a)(1)(A), a party makes a false claim when they

17  knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval.

18       32.      Pursuant to 31 U.S.C. § 3729(a)(1)(B), a party makes a false statement when they

19  knowingly make, use or cause to be made or used, a false record or statement material to a false

20  or fraudulent claim.

21       33.      Pursuant to 31 U.S.C. § 3729(a)(1)(C), a party violates the False Claims Act when

22  they conspire to commit a violation of particular subparagraphs of the False Claims Act,

23  including subparagraphs (a)(1)(A), (B) or (C).

24       34.      Pursuant to 31 U.S.C. § 3729(a)(1)(G), a party knowingly makes, uses, or causes

25  to be made or used, a false record or statement material to an obligation to pay or transmit money

26  or property to the government, or knowingly conceals or knowingly and improperly avoids or

27  decreases an obligation to pay or transit money or property to the government.

28

FIRST AMENDED COMPLAINT

35.     The term "knowingly" means that a party, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Knowingly does not require proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

## PAYCHECK PROTECTION PROGRAM

36.     In 2020, the United States Congress passed the CARES Act so that small businesses could obtain relief during the COVID-19 pandemic. The CARES Act allowed for First Draw PPP loans with various requirements for different types of businesses. Later, Congress passed the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. This Act allowed for Second Draw PPP loans with very specific requirements for businesses. Millions of applicants collectively received hundreds of billions of dollars through the Paycheck Protection Program ("PPP") which was administered by the Small Business Administration. While it was the intent of Congress that these funds be used by eligible businesses to support payroll costs, certain ineligible businesses applied for PPP funds and used these funds for purposes that were not the intent of Congress. Moreover, certain ineligible businesses sought loan forgiveness even though they were never eligible for PPP funds and did not use the funds for purposes that were the intent of Congress.

37.     Entities were able to apply for initial PPP loans (i.e., First Draw PPP loans) in 2020.

38.     First Draw PPP loan applications required applicants to certify to the following:

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

39.     Within First Draw PPP loan applications, applicants were asked to mark Yes or

1  No in response to the following question 3.

2          Is the Applicant or any owner of the Applicant an owner of any other business, or
   have common management with, any other business? If yes, list all such
3          businesses and describe the relationship on a separate sheet identified as
   addendum A.
4

5      40.    Addendum A was supposed to include all affiliated entities, i.e., all other

6  businesses with common management and ownership. Federal regulation 13 C.F.R. § 121.106

7  details the methodology for calculating the number of employees. Common management and

8  ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or

9  more officers, directors, managing members or general partners of a business controls the Board

10 of Directors or the management of another business, the businesses are affiliated. 13 C.F.R. §

11 121.103(e). Common ownership can be established in a number of ways. 13 C.F.R. § 121.301(f).

12 Either common management or ownership is sufficient to establish affiliation.

13     41.    The CARES Act and federal regulations further specify that applicants were only

14 eligible for First Draw PPP loans if affiliated entities had under 500 employees, met a pertinent

15 industry size standard, or met the alternative size standard. There are different industry size

16 standards for different types of medical facilities. For instance, at the time of application, the

17 industry size standard for General Medical and Surgical Hospitals was having maximum annual

18 receipts of $41.5 million and the industry size standard for Nursing Care Facilities was having

19 maximum annual receipts of $30 million. U.S. Small Business Administration, Table of Small

20 Business Size Standards, Subsectors 622110 and 623110 (August 2019).[2] The alternative size

21 standard required both not having more than $5 million in average net income after Federal

22 income taxes (excluding any carry-over losses) for the two preceding full fiscal years and not

23

24 ─────────────────

[2] Several defendant facilities altered their industry classification between First and Second Draw PPP loans. Apollo
25 Healthcare at Bay Area, Apollo Healthcare at Pearland LLC, and Apollo Rehab at Woodlands LLC identified as
General Medical and Surgical Hospitals for their First Draw PPP loans and identified as Nursing Care Facilities for
26 their Second Draw PPP loans. Apollo Rehab Hospitals LLC identified as Residential Mental Health and Substance
Abuse Facilities for their First Draw PPP loan and Specialty (except Psychiatric and Substance Abuse) Hospitals for
27 their Second Draw PPP loan. Senior Care Excellence LLC identified as Nursing Care Facilities for their First Draw
PPP loan and General Management Consulting Services for their Second Draw PPP loan.
28

FIRST AMENDED COMPLAINT

1    having more than $15 million in tangible net worth. If an applicant had either more than $5

2    million in average net income after Federal income taxes (excluding any carry-over losses) for

3    the two preceding full fiscal years or more than $15 million in tangible net worth, the applicant

4    was not eligible under the alternative size standard. U.S. Small Business Administration,

5    "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)" (2020) (pertaining to

6    13 C.F.R. § 121.301(b)).

7        42.    First Draw PPP loan applications also include the following certification:

8               Current economic uncertainty makes this loan request necessary to support the
                ongoing operations of the Applicant.
9

10       43.    When applying for forgiveness for a First Draw PPP loan, applicants had to

11   certify that PPP loan proceeds were used for eligible purposes and certify that information

12   provided in all supporting documents and forms was true and correct in all material respects.

13       44.    Entities were able to apply for additional PPP loans (i.e., second draw PPP loans)

14   in 2021.

15       45.    Similar to First Draw PPP loan applications, Second Draw PPP loan applications

16   also required applicants to certify to the following:

17              I further certify that the information provided in this application and the
                information provided in all supporting documents and forms is true and accurate
18              in all material respects. I understand that knowingly making a false statement to
                obtain a guaranteed loan from the SBA is punishable under the law, including
19              under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years
                and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not
20              more than two years and/or a fine of not more than $5,000; and, if submitted to a
                federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more
21              than thirty years and/or a fine of not more than $1,000,000.

22       46.    Similar to First Draw PPP loan applications, within Second Draw PPP loan

23   applications, Second Draw PPP loan applicants were asked to mark Yes or No in response to the

24   following question 3.

25              Is the Applicant or any owner of the Applicant an owner of any other business, or
                have common management (including a management agreement) with any other
26              business? If yes, list all such businesses (including their TINs if available) and
                describe the relationship on a separate sheet identified as addendum A.
27

28

FIRST AMENDED COMPLAINT

47.     Addendum A was supposed to include all affiliated entities, i.e., all other businesses with common management and ownership. Federal regulation 13 C.F.R. § 121.106 details the methodology for calculating the number of employees. Common management and ownership are defined in federal regulations 13 C.F.R. §§ 121.103(e) and 121.301(f). If one or more officers, directors, managing members or general partners of a business controls the Board of Directors or the management of another business, the businesses are affiliated. 13 C.F.R. § 121.103(e). Common ownership can be established in a number of ways. 13 C.F.R. § 121.301(f). Either common management or ownership is sufficient to establish affiliation.

48.     The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act and federal regulations further specify that applicants were only eligible for Second Draw PPP loans if affiliated entities had under 300 employees with limited exception. Unlike with the First Draw PPP loans, Second Draw applicants were not eligible simply because they met a pertinent industry size standard or the alternative size standard. The Second Draw PPP loan application makes this abundantly clear in the application itself, stating the following in bold:

**Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies):**

The applicant must list the number of employees, including affiliates. Moreover, the applicant must later certify to meeting this eligibility criteria.

49.     As with First Draw PPP loan applications, Second Draw PPP loan applications also include the following certification:

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

50.     For Second Draw PPP loan applications, applicants must also make the following additional certification.

The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgives for the Second Draw Paycheck Protection Program Loan or upon

- 9 -

FIRST AMENDED COMPLAINT

1    SBA request.

2    51.    For Second Draw PPP loan applications, entities that were part of a single

3    corporate group were also not allowed to collectively receive more than $4 million of loans. U.S.

4    Small Business Administration, "Business Loan Program Temporary Changes; Paycheck

5    Protection Program Second Draw Loans" (2021).

6    52.    When applying for forgiveness for a Second Draw PPP loan, applicants had to

7    certify that PPP loan proceeds were used for eligible purposes and certify that information

8    provided in all supporting documents and forms is true and correct in all material respects.

9    **FALSE CLAIMS AND STATEMENTS WITH PPP APPLICATIONS**

10    53.    At least eight defendant medical facilities amongst Defendants applied for First

11    Draw PPP loans with various financial lenders. Among other reasons, these defendant medical

12    facilities were not eligible for First Draw PPP loans because affiliated entities collectively had

13    more than 500 employees, held interests in real estate worth tens of millions of dollars, and

14    generated too much income. *See* Regrid (2024). At least eight defendant medical facilities

15    amongst Defendants applied for Second Draw PPP loans with various financial lenders. Among

16    other reasons, these defendant medical facilities were not eligible for Second Draw PPP loans

17    because affiliated entities of Defendants collectively had more than 300 employees. Affiliated

18    entities of Defendants also did not collectively suffer a sufficient decrease in gross receipts.

19    Defendants' Second Draw PPP loans also exceeded the $4 million hard cap for Second Draw

20    PPP loans.

21    54.    With respect to both First Draw PPP loans and Second Draw PPP loans, the

22    defendant medical facilities and real estate holding companies are affiliated for two distinct

23    reasons which are each sufficient to establish affiliation. First, there is common management

24    amongst the defendant borrower medical facilities and the real estate where those medical

25    facilities operate. In particular, Defendant Archana Thota is the President of all eight defendant

26    borrowers. Second, Defendant Archana Thota has an ownership interest in borrower defendants

27    and the real estate where borrower defendants are located. *See* Regrid (2024). This is detailed in

28

FIRST AMENDED COMPLAINT

the below tables.

**Table 1: Medical Facility Defendants' Common Management and Ownership**

| Defendant | PPP Borrower Address | Officers |
|---|---|---|
| Apollo Healthcare at SugarLand, LP (dba The Medical Resort at Sugar Land) | 1803 Wescott Ave, Sugar Land, TX* | General Partner: Apollo Partners at SugarLand, LLC<br><br>President and Manager of Apollo Partners at SugarLand, LLC: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Apollo Healthcare at Bay Area, LP (dba The Medical Resort at Bay Area) | 4900 E Sam Houston Pkwy S, Pasadena, TX* | General Partner: Apollo Community Partners, LLC<br><br>President and Manager of Apollo Community Partners, LLC: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Apollo Healthcare at Willowbrook, LLC (dba The Medical Resort at Willowbrook) | 13220 Breton Ridge St, Houston, TX* | President and Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Apollo Healthcare at Pearland, LLC (dba Thrive Rehabilitation of Pearland) | 3406 Business Center Dr, Pearland, TX* | President and Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Apollo Rehab Hospital, LLC (dba PAM Health Rehabilitation Hospital of Sugar Land) | 7622 Branford Pl, Sugar Land, TX | President and Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Apollo Rehab at Woodlands, LLC (The Medical Resort of the Woodlands) | 24854 Cathedral Lakes Pkwy, Spring, TX* | President and Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Senior Care Excellence, LLC (dba The Medical Resort at Sugar Land) | 1803 Wescott Ave Sugar Land, TX* | President and Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Founders Plaza Nursing & Rehabilitation, LP (dba Founders Plaza Nursing and Rehabilitation) | 721 Highway 78, Wylie, TX | General Partner: Founders Plaza Nursing & Rehabilitation Partners, LLC<br><br>President and Manager of Founders Plaza Nursing & |

* This property is owned by Defendant Archana Thota. *See* Table 2: Defendants' Real Estate Holdings.

- 11 -

FIRST AMENDED COMPLAINT

| | | Rehabilitation Partners, LLC: Archana Thota, 6125 Luther Ln, Dallas, TX |
|---|---|---|

**Table 2: Defendants' Real Estate Holdings**

| Defendant | Real Estate Owned | Real Estate Assessed Value | Management and Control |
|---|---|---|---|
| SugarLand Med Properties, LP | 1803 Wescott Ave, Sugar Land, TX | $10,251,435 | General Partner: SugarLand Med Property Partners, LLC<br><br>Manager of SugarLand Med Property Partners, LLC: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Beltway 8 Med Properties, LP | 4900 E Sam Houston Pkwy S, Pasadena, TX | $12,799,780 | General Partner: Beltway 8 Med Property Partners LLC<br><br>Manager of Beltway 8 Med Property Partners LLC: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Willowbrook Med Properties, LLC | 13220 Breton Ridge St, Houston, TX | $15,718,400 | Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |
| Woodlands Med Properties, LLC | 24854 Cathedral Lakes Pkwy, Spring, TX | $8,750,000 | Manager: Archana Thota, 6125 Luther Ln, Dallas, TX |

55.    Defendant Apollo Healthcare at SugarLand, LP doing business as The Medical Resort at Sugar Land applied for a First Draw PPP loan in the amount of $1,149,100 with Centennial Bank which was approved on April 8, 2020 and a Second Draw PPP loan in the amount of $1,149,156 with One World Bank which was approved on February 26, 2021. Apollo

FIRST AMENDED COMPLAINT

1  Healthcare at SugarLand LP received forgiveness for both the First Draw PPP loan and Second

2  Draw PPP loan. However, in its PPP applications, Apollo Healthcare at SugarLand LP did not

3  identify all affiliated entities or otherwise accurately represent the number of employees, wage

4  information, annual receipts, tangible net worth, income, or financial need of all affiliated

5  entities. Moreover, in the Second Draw PPP loan application, Apollo Healthcare at SugarLand

6  LP did not list an accurate number of employees that included employees at all affiliated entities.

7  Applying with only a select subset of medical facilities also made it impossible for lenders to

8  assess whether affiliated entities suffered the sufficient reduction in gross receipts required for

9  Second Draw PPP loan eligibility.

10       56.    Defendant Apollo Healthcare Bay Area, LP doing business as The Medical Resort

11  at Bay Area applied for a First Draw PPP loan in the amount of $1,040,859 with One World

12  Bank which was approved on April 11, 2020 and a Second Draw PPP loan in the amount of

13  $1,040,859 with One World Bank which was approved on May 27, 2021. Apollo Healthcare Bay

14  Area, LP received forgiveness for both the First Draw PPP loan and Second Draw PPP loan.

15  However, in its PPP applications, Apollo Healthcare Bay Area, LP did not identify all affiliated

16  entities or otherwise accurately represent the number of employees, wage information, industry,

17  annual receipts, tangible net worth, income, or financial need of all affiliated entities. Moreover,

18  in the Second Draw PPP loan application, Apollo Healthcare Bay Area, LP did not list an

19  accurate number of employees that included employees at all affiliated entities. Applying with

20  only a select subset of medical facilities also made it impossible for lenders to assess whether

21  affiliated entities suffered the sufficient reduction in gross receipts required for Second Draw

22  PPP loan eligibility.

23       57.    Defendant Apollo Healthcare at Willowbrook, LLC doing business as The

24  Medical Resort at Willowbrook applied for a First Draw PPP loan in the amount of $692,150

25  with One World Bank which was approved on April 5, 2020 and a Second Draw PPP loan in the

26  amount of $692,150 with One World Bank which was approved on May 27, 2021. Apollo

27  Healthcare received forgiveness for both the First Draw PPP loan and Second Draw PPP loan.

28

FIRST AMENDED COMPLAINT

1  However, in its PPP applications, Apollo Healthcare did not identify all affiliated entities or

2  otherwise accurately represent the number of employees, annual receipts, tangible net worth,

3  income, or financial need of all affiliated entities. Moreover, in the Second Draw PPP loan

4  application, Apollo Healthcare did not list an accurate number of employees that included

5  employees at all affiliated entities. Applying with only a select subset of medical facilities also

6  made it impossible for lenders to assess whether affiliated entities suffered the sufficient

7  reduction in gross receipts required for Second Draw PPP loan eligibility.

8      58.    Defendant Apollo Healthcare at Pearland, LLC doing business as Thrive

9  Rehabilitation of Pearland applied for a First Draw PPP loan in the amount of $572,911 with

10  One World Bank which was approved on April 4, 2020 and a Second Draw PPP loan in the

11  amount of $572,911 with One World Bank which was approved on January 20, 2021. Apollo

12  Healthcare at Pearland. LLC received forgiveness for both the First Draw PPP loan and Second

13  Draw PPP loan. However, in its PPP applications, Apollo Healthcare at Pearland. LLC did not

14  identify all affiliated entities or otherwise accurately represent the number of employees, wage

15  information, industry, annual receipts, tangible net worth, income, or financial need of all

16  affiliated entities. Moreover, in the Second Draw PPP loan application, Apollo Healthcare at

17  Pearland. LLC did not list an accurate number of employees that included employees at all

18  affiliated entities. Applying with only a select subset of medical facilities also made it impossible

19  for lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts

20  required for Second Draw PPP loan eligibility.

21      59.    Defendant Apollo Rehab Hospital. LLC doing business as PAM Health

22  Rehabilitation Hospital of Sugar Land applied for a First Draw PPP loan in the amount of

23  $612,100 with Third Coast Bank SSB which was approved on April 13, 2020 and a Second

24  Draw PPP loan in the amount of $925,734 with One World Bank which was approved on May

25  27, 2021. Apollo Rehab Hospital. LLC received forgiveness for both the First Draw PPP loan

26  and Second Draw PPP loan. However, in its PPP applications, Apollo Rehab Hospital. LLC did

27  not identify all affiliated entities or otherwise accurately represent the number of employees,

28

FIRST AMENDED COMPLAINT

1  wage information, industry, annual receipts, tangible net worth, income, or financial need of all

2  affiliated entities. Moreover, in the Second Draw PPP loan application, Apollo Rehab Hospital.

3  LLC did not list an accurate number of employees that included employees at all affiliated

4  entities. Applying with only a select subset of medical facilities also made it impossible for

5  lenders to assess whether affiliated entities suffered the sufficient reduction in gross receipts

6  required for Second Draw PPP loan eligibility.

7       60.    Defendant Apollo Rehab at Woodlands. LLC doing business as The Medical

8  Resort of the Woodlands applied for a First Draw PPP loan in the amount of $541,370 with One

9  World Bank which was approved on April 5, 2020 and a Second Draw PPP loan in the amount

10 of $541,370 with One World Bank which was approved on January 20, 2021. Apollo Rehab at

11 Woodlands. LLC received forgiveness for both the First Draw PPP loan and Second Draw PPP

12 loan. However, in its PPP applications, Apollo Rehab at Woodlands. LLC did not identify all

13 affiliated entities or otherwise accurately represent the number of employees, industry, annual

14 receipts, tangible net worth, income, or financial need of all affiliated entities. Moreover, in the

15 Second Draw PPP loan application, Apollo Rehab at Woodlands. LLC did not list an accurate

16 number of employees that included employees at all affiliated entities. Applying with only a

17 select subset of medical facilities also made it impossible for lenders to assess whether affiliated

18 entities suffered the sufficient reduction in gross receipts required for Second Draw PPP loan

19 eligibility.

20      61.    Defendant Senior Care Excellence. LLC doing business as The Medical Resort at

21 Sugar Land applied for a First Draw PPP loan in the amount of $154,800 with Third Coast Bank

22 FSB which was approved on April 13, 2020 and a Second Draw PPP loan in the amount of

23 $154,800 with Third Coast Bank FSB which was approved on June 15, 2021. The First Draw

24 PPP loan was forgiven and the Second Draw PPP loan was charged off. However, in its PPP

25 applications, Senior Care Excellence. LLC did not identify all affiliated entities or otherwise

26 accurately represent the number of employees, wage information, industry, annual receipts,

27 tangible net worth, income, or financial need of all affiliated entities. Moreover, in the Second

28

FIRST AMENDED COMPLAINT

1  Draw PPP loan application, Senior Care Excellence. LLC did not list an accurate number of

2  employees that included employees at all affiliated entities. Applying with only a select subset of

3  medical facilities also made it impossible for lenders to assess whether affiliated entities suffered

4  the sufficient reduction in gross receipts required for Second Draw PPP loan eligibility.

5         62.    Defendant Founders Plaza Nursing & Rehabilitation, LP doing business as

6  Founders Plaza Nursing and Rehabilitation applied for a First Draw PPP loan in the amount of

7  $735,859 with One World Bank which was approved on April 11, 2020. The First Draw PPP

8  loan was charged off. However, in its PPP application, Founders Plaza Nursing & Rehabilitation,

9  LP did not identify all affiliated entities or otherwise accurately represent the number of

10  employees, annual receipts, tangible net worth, income, or financial need of all affiliated entities.

11        63.    Defendant SugarLand Med Properties, LP withheld information from PPP loan

12  applications that would have further shown that defendant borrowers and affiliated entities were

13  ineligible for PPP loans.

14        64.    Defendant Beltway 8 Med Properties, LP withheld information from PPP loan

15  applications that would have further shown that defendant borrowers and affiliated entities were

16  ineligible for PPP loans.

17        65.    Defendant Willowbrook Med Properties, LLC withheld information from PPP

18  loan applications that would have further shown that defendant borrowers and affiliated entities

19  were ineligible for PPP loans.

20        66.    Defendant Woodlands Med Properties, LLC withheld information from PPP loan

21  applications that would have further shown that defendant borrowers and affiliated entities were

22  ineligible for PPP loans.

23        67.    Defendant Apollo Partners at Sugarland, LLC withheld information from PPP

24  loan applications that would have further shown that defendant borrowers and affiliated entities

25  were ineligible for PPP loans.

26        68.    Defendant Apollo Community Partners, LLC withheld information from PPP loan

27  applications that would have further shown that defendant borrowers and affiliated entities were

28

FIRST AMENDED COMPLAINT

1  ineligible for PPP loans.

2       69.     Defendant Founders Plaza Nursing & Rehabilitation Partners, LLC withheld

3  information from PPP loan applications that would have further shown that defendant borrowers

4  and affiliated entities were ineligible for PPP loans.

5       70.     Defendant Sugarland Med Property Partners, LLC withheld information from PPP

6  loan applications that would have further shown that defendant borrowers and affiliated entities

7  were ineligible for PPP loans.

8       71.     Defendant Beltway 8 Med Property Partners, LLC withheld information from

9  PPP loan applications that would have further shown that defendant borrowers and affiliated

10  entities were ineligible for PPP loans.

11       72.     Defendant Archana Thota withheld information from PPP loan applications that

12  would have further shown that affiliated entities of Defendants were ineligible for PPP loans,

13  such as information showing that collectively affiliated entities of Defendants have **over one**

14  **thousand employees**. Even in PPP applications themselves, Defendants listed **at least 1,377**

15  **employees** across applications during the First Draw loan period and **at least 467 employees**

16  across applications during the Second Draw loan period. Tables showing applicant names, loan

17  amounts, and jobs reported are below. Affiliated entities of Defendants obtained **at least**

18  **$10,576,131.50 of PPP loans**, including **at least $5,076,981.49 of Second Draw PPP loans**.

19  **Table 3: Defendants' First Draw PPP Loans**

20

| Applicant | Loan Amount |
|---|---|
| Apollo Healthcare at Sugarland, LP | $1,149,100 |
| Apollo Healthcare at Bay Area, LP | $1,040,859.87 |
| Apollo Healthcare at Willowbrook, LLC | $692,150 |
| Apollo Healthcare at Pearland, LLC | $572,911.15 |
| Apollo Rehab Hospital, LLC | $612,100 |
| Apollo Rehab at Woodlands, LLC | $541,370 |
| Senior Care Excellence, LLC | $154,800 |

FIRST AMENDED COMPLAINT

| Founders Plaza Nursing & Rehabilitation, LP | $735,859 | |
| Total | **$5,499,150.02** | |

**Table 4: Defendants' Second Draw PPP Loans**

| Applicant | Loan Amount |
|---|---|
| Apollo Healthcare at SugarLand, LP | $1,149,156.47 |
| Apollo Healthcare at Bay Area, LP | $1,040,859.87 |
| Apollo Healthcare at Willowbrook, LLC | $692,150 |
| Apollo Healthcare at Pearland, LLC | $572,911.15 |
| Apollo Rehab Hospital, LLC | $925,734 |
| Apollo Rehab at Woodlands, LLC | $541,370 |
| Senior Care Excellence, LLC | $154,800 |
| Total | **$5,076,981.49** |

**Table 5: Defendants' Jobs Reported on PPP Applications**

| Applicant | Jobs Reported |
|---|---|
| Apollo Healthcare at SugarLand, LP | 200 (First Draw) and 51 (Second Draw) |
| Apollo Healthcare at Bay Area, LP | 383 (First Draw) and 110 (Second Draw) |
| Apollo Healthcare at Willowbrook, LLC | 72 (First Draw) and 65 (Second Draw) |
| Apollo Healthcare at Pearland, LLC | 244 (First Draw) and 105 (Second Draw) |
| Apollo Rehab Hospital, LLC | 179 (First Draw) and 52 (Second Draw) |
| Apollo Rehab at Woodlands, LLC | 80 (First Draw) and 77 (Second Draw) |
| Senior Care Excellence, LLC | 21 (First Draw) and 7 (Second Draw) |
| Founders Plaza Nursing & Rehabilitation, LP | 198 (First Draw) |
| Total | **1,377** (First Draw) and **467** (Second Draw) |

**Loan amounts stayed similar across loan draw periods, but certain reported employee numbers decreased dramatically. This is indicative of wage information manipulation.**

- 18 -

FIRST AMENDED COMPLAINT

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Submission of False Claim**
**31 U.S.C. § 3729(a)(1)(A)**

73.    Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

74.    A party makes a false claim when they knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

75.    Defendants knowingly made false claims when they certified that they were eligible for PPP loans and that all information included with their application was true and accurate in material respects.

76.    Without these claims, the United States would not have provided Defendants with the millions of dollars that Defendants received.

77.    Without these certifications, the United States would not have provided lenders with tens of thousands of dollars of PPP loan processing fees.

78.    The United States thus suffered actual damages of millions of dollars and should be awarded three times these damages and should be awarded maximum penalties for each violation of 31 U.S.C. § 3729(a)(1)(A).

### SECOND CAUSE OF ACTION
**False Statement in Support of Claim**
**31 U.S.C. § 3729(a)(1)(B)**

79.    Relator incorporates all of the allegations in the above paragraphs as though fully alleged herein.

80.    A party makes a false claim when they knowingly make, uses, or cause to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

81.    Defendants knowingly made false statements about their size when they did not identify or otherwise provide information on all affiliated entities in their PPP loan applications.

82.    Without these false statements, the United States would not have provided

- 19 -
FIRST AMENDED COMPLAINT

1   Defendants with the millions of dollars that Defendants received.

2        83.    Without these false statements, the United States would not have provided lenders

3   with tens of thousands of dollars of PPP loan processing fees.

4        84.    The United States thus suffered actual damages of millions of dollars and should

5   be awarded three times these damages and should be awarded maximum penalties for each

6   violation of 31 U.S.C. § 3729(a)(1)(B).

7

**THIRD CAUSE OF ACTION**
**Conspiracy to Violate the False Claims Act**
**31 U.S.C. § 3729(a)(1)(C)**

8

9        85.    Relator incorporates all of the allegations in the above paragraphs as though fully

10   alleged herein.

11        86.    A party violates the False Claims Act when it has conspired to commit a violation

12   of particular subparagraphs of the Act, including subparagraphs (a)(1)(A), (B) or (G). 31 U.S.C.

13   § 3729(a)(1)(C).

14        87.    Defendants knowingly conspired to violate the False Claims Act when they

15   separately applied for PPP loans through various lenders, provided information that did not

16   identify the full size of affiliated entities and retained loan proceeds.

17        88.    If not for Defendants' provision of information that did not identify the full size of

18   affiliated entities and retention of loan proceeds, the United States would not have provided

19   Defendants with the millions of dollars of PPP loans that Defendants received.

20        89.    Without Defendants' provision of information that did not identify the full size of

21   affiliated entities and retention of loan proceeds, the United States would not have provided

22   lenders with tens of thousands of dollars of loan processing fees.

23        90.    The United States thus suffered actual damages of millions of dollars and should

24   be awarded three times these damages and should be awarded maximum penalties for each

25   violation of 31 U.S.C. § 3729(a)(1)(C).

26

27

28

- 20 -

FIRST AMENDED COMPLAINT

1

**FOURTH CAUSE OF ACTION**
**Avoidance of Obligation to Pay Government**
**31 U.S.C. § 3729(a)(1)(G)**

2

3      91.      Relator incorporates all of the allegations in the above paragraphs as though fully

4  alleged herein.

5      92.      A party knowingly makes, uses or causes to be made or used, a false record or

6  statement material to an obligation to pay or transmit money or property to the government, or

7  knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or

8  transit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

9      93.      Defendants knowingly avoided their obligation to pay the government when they

10  retained PPP loan proceeds where the proceeds were not used for eligible purposes.

11      94.      Because Defendants retained government money, the United States lost millions

12  of dollars.

13      95.      The United States thus suffered actual damages of millions of dollars and should

14  be awarded three times these damages and should be awarded maximum penalties for each

15  violation of 31 U.S.C. § 3729(a)(1)(G).

16

**<ins>PRAYER FOR RELIEF</ins>**

17      WHEREFORE, Relator respectfully prays that this Court:

18      a.      Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, enter a judgement

19  against Defendants for three times the actual damages that the United States of America has

20  sustained because of Defendants' actions, plus the maximum civil penalty for each violation of

21  31 U.S.C. § 3729;

22      b.      Pursuant to 31 U.S.C. § 3730(d), award Relator the maximum amount of proceeds

23  of this action allowed, including reasonable attorneys' fees and costs;

24      c.      If the United States elects to intervene and proceed with this action, award Relator

25  between 15% and 25% of the proceeds of this action or of any settlement in accordance with 31

26  U.S.C. § 3730(d)(1);

27      d.      If the United States does not proceed with this action, award Relator between 25%

28

- 21 -
FIRST AMENDED COMPLAINT

1  and 30% of the proceeds of this action or any settlement in accordance with 31 U.S.C. §

2  3730(d)(2);

3       e.     If the United States elects to pursue an alternate remedy, award Relator a share of

4  that alternate remedy in accordance with 31 U.S.C. § 3730(c)(5);

5       f.     Award the United States and Relator prejudgment and post judgment interest; and

6       g.     Award the United States and Relator all other relief which they are reasonably

7  entitled to receive.

8  **DEMAND FOR JURY TRIAL**

9       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands a jury

10  trial.

11

12  Respectfully submitted,

13  Dated: January 29, 2025

14                               Signature:

15                               AARON EZROJ
                             Attorney-In-Charge

16                               CA SBN 263711

17                               SDTX IN 3891777
                             QUI TAM LAW, P.C.

18                               1024 Bayside Dr. # 349

19                               Newport Beach, CA 92660
                             Telephone: 949-312-1042

20

21

22

23

24

25

26

27

28

- 22 -

FIRST AMENDED COMPLAINT